Louis H. Salvage Shoe Co. *vs.* Irving L. Keith.

Essex.    March 3, 1953. — April 1, 1953.

Present: Qua, C.J., Wilkins, Spalding, Williams, & Counihan, JJ.

*Sale,* What constitutes. *Practice, Civil,* Appeal; Auditor: confirmation
of report; Order for judgment. *Words,* "Royalty."

There is no provision for confirming the report of an auditor even though
his findings are final, and an appeal from such a confirmation required
no consideration by this court. [93]
The allowance of a motion for judgment upon the report of an auditor
whose findings are final is equivalent to an order for judgment, from
which an appeal to this court lies under G. L. (Ter. Ed.) c. 231, § 96.
[93]
The facts respecting the furnishing of backing adhesive to a shoe manu-
facturer under an invoice describing the adhesive, stating the net sum
to be paid by the shoe manufacturer as a "Royalty" in a certain
amount less a specified percentage thereof, and containing references
to the furnisher of the adhesive as "the seller" and to "prices" and
"discount" supported a conclusion that the transaction was a sale of
the adhesive rather than that "the adhesive was furnished . . . as
a means of measuring the royalty . . . due for the use made of"
backing machines leased by the furnisher of the adhesive to the shoe
manufacturer. [93–94]

Contract.    Writ in the Superior Court dated February
19, 1951.

The action was heard by *Morton,* J., upon the report of
an auditor.

*Joseph P. Sullivan,* for the defendant.

*John Ohanesian,* for the plaintiff.

Williams, J.    This is an action of contract to recover
damages for breaches of warranties of fitness and mer-
chantability in the sale of backing adhesive.    An auditor,
whose findings of fact were final, reported as follows.    The
plaintiff is a corporation which for nineteen years has
engaged in the manufacture and sale of women's shoes in
popular styles and colors, including white suede.    It leases

from the defendant twelve or more machines which are used in "a process known as backing whereby the leather vamp is reinforced by having cemented to it on its underneath side a piece of stiff cloth material called a backer." The backer is cemented to the vamp under machine pressure by means of a backing adhesive. This adhesive has been furnished by the defendant during the years that the plaintiff has been in business, and the plaintiff has always relied on the defendant's skill and judgment to supply it with adhesive that was reasonably fit for the purposes for which it was customarily used. During December, 1949, and January, 1950, backing adhesive was ordered by the plaintiff and delivered in due course by the defendant. This adhesive was used in affixing backing on white suede shoes. The shoes were shipped south and within a few weeks 4,300 pairs were returned by the purchasers as defective. They had developed brown spots on the outside of the shoes opposite the points where the backing machine came in contact with the backer. The spots were caused by a "dark brown oily substance" contained in the adhesive which had been furnished by the defendant. This adhesive had a synthetic rubber base while other adhesive previously furnished had a natural rubber base. In compounding backing adhesive for his customers the defendant was accustomed to use ingredients based upon the needs and requirements of his individual customers. He knew that the adhesive sold to the plaintiff in December, 1949, and January, 1950, was to be used for the manufacture of women's shoes of various colors, including white suede. For five or six years the adhesive furnished to the plaintiff had, as a matter of convenience, been given the designation "3200 H." Since it was given this number the plaintiff used the same grade of adhesive at all times and continued to "rely upon the skill and judgment of the defendant to see that the backing adhesive sent to it would be suitable and proper according to . . . [its] needs."

The auditor found that the adhesive which caused the damage to the shoes was sold to the plaintiff by the de-

fendant; that it was not reasonably fit for the purpose for which it was purchased; that there was a breach by the defendant of the implied warranty of fitness (G. L. [Ter. Ed.] c. 106, § 17 [1]); and that the resulting damage to the plaintiff amounted to $10,031.90. The judge allowed motions of the plaintiff to confirm the auditor's report and to enter judgment for the plaintiff in the above amount with interest to the date of the report. The defendant appealed from the "order" confirming the auditor's report and from the "order" that judgment be entered for the plaintiff. As there is no provision for confirming an auditor's report (*United States Fidelity & Guaranty Co.* v. *English Construction Co.* 303 Mass. 105, 112), the first appeal requires no consideration. The second appeal is properly before us since the allowance of the motion for judgment was equivalent to an order for judgment and was decisive of the case. *Monaghan* v. *Monaghan*, 320 Mass. 367, 368. G. L. (Ter. Ed.) c. 231, § 96.

The only question argued by the defendant is whether as matter of law the auditor was warranted in finding that the adhesive was sold to the plaintiff. He contends that "the transaction . . . was not a sale . . . [and] that the adhesive was furnished . . . as a means of measuring the royalty or rent due for the use made of the leased machines."

The terms of the lease or leases were not in evidence but the auditor had before him three invoices similar in form dated December 12, 1949, January 5, 1950, and January 27, 1950, relating to the shipments or deliveries of the adhesive in question. The invoice of December 12, 1949, which is stated by the auditor to be a sample of these invoices, was captioned with the defendant's name, was addressed to the plaintiff, and referred to the plaintiff's order number. It contained the following "legend."

"6 Kegs 3200 H. Backing Adhesive 279 lbs.    Royalty  1.00    279.00
                                              Less 51.3%   135.87"

It also stated that "a 2% discount would be allowed if paid within ten days" and that "all prices" were subject to

change. There appeared the notation "the seller represents that, with respect to the production of the articles covered by this invoice, it has fully complied with Section 12 (A) of the Fair Labor Standards Act of 1938 as amended." The auditor found this to be "a bill . . . for the sale of the described goods for which the purchase price was $135.87" and that "each of these three transactions represented by these bills of sale constituted a sale." He stated that the only explanation given for the use of the term "Royalty" was that it was used to describe the discount given, based on the quality of the adhesive ordered.

The phrasing of the sample invoice is obscure. The defendant uses the term "Royalty" which "commonly imports payment for permissive or lawful use of a property right." *Raytheon Manuf. Co.* v. *Radio Corp. of America,* 286 Mass. 84, 94. He also refers to himself as the "seller" and alludes to "prices" and "discount," expressions ordinarily associated with the terms of a sale rather than of a lease. See *Cousbelis* v. *Alexander,* 315 Mass. 729, 731; *Cox* v. *Savage,* 209 Mass. 501, 508; *Napier* v. *John V. Farwell Co.* 60 Colo. 319. We think that there was no error in the finding of the auditor that the invoice was a billing of goods by way of sale and in his conclusion that the transactions evidenced by the invoices were sales.

*Order for judgment affirmed.*